MOORE, Judge.
Barry V. Frederick (“the former husband”) appeals from a judgment of the Jefferson Circuit Court (“the trial court”) finding that Shelia Frederick (“the former wife”) was not in contempt and ordering the former husband to pay the former wife $3,220 as attorney fees. We affirm in part and reverse in part.

Background

The parties were married in 1978. In September 1994, the former husband filed a complaint seeking a divorce; in that complaint, he alleged that he and the. former wife had ceased living as husband and wife as of June 1994 but that they had continued to reside together after that time. The trial court entered a judgment of divorce on April 19, 1996. The trial court incorporated into that judgment the parties’ stipulated settlement agreement; that agreement contained, among other things, the following provision, identified as subparagraph ’6.a.(4), which set forth the manner in which the parties were to divide their personal property:
“(4) Wife shall receive the drapes, washer, dryer, dishwasher, and refrigerator in the residence. Husband shall receive the entertainment center in the den.
“It is the intent of the parties that all other household furniture, furnishings, and other household items (including, but not limited to, bed linens, sheets, towels, dishes, glasses, pots and pans, etc.) be divided equally between them with the exception of the child’s furniture which shall be retained by Wife. To carry out the terms of this paragraph, each party shall make a list of those items he or she wants. After compiling the lists, any items remaining in dispute shall be selected by the parties with alternate selections with the Wife selecting first followed by Husband, and so forth until all items have been divided. In the event a dispute shall arise, the parties agree that Judge John Bryan shall serve as mediator to effectuate the intent of this paragraph. Husband shall be responsible for his fee.”
In July 1997, the former wife filed a petition for a rule nisi seeking a finding of contempt against the former husband on the ground that the former husband had failed to comply with numerous provisions of the divorce judgment; that action was docketed as case no. DR-94-3189.01. The former husband answered the petition and filed a counterclaim in which he alleged that the former wife was in contempt for failing to comply with subparagraph 6.a.(4) of the divorce judgment.
Those competing contempt petitions resulted in the entry of a “Consent Order,” entered on January 26, 1999, in which the trial court found that neither party was in contempt. In the 1999 consent order, the trial court specifically addressed, among other things, subparagraph 6.a.(4) of the divorce judgment. The trial court specifically reaffirmed subparagraph 6.a.(4) and identified a specific date for the parties to conduct an inventory of their personal property, whether located at the former husband’s residence or the former wife’s residence, and identified a specific date for the parties to exchange a list of the personal property each wished to receive.
In 2007, the former husband initiated a civil action in the trial court against the former wife, alleging conversion and unjust enrichment as a result of the former wife’s alleged failure to comply with the provisions regarding the division of personal property set forth in the divorce judgment and the 1999 consent order; the former husband also sought an accounting *794 of the personal property from the marriage. That action was designated as case no. CV-07-902727. In 2008, the trial court entered a summary judgment in favor of the former wife on the former husband’s claims of conversion and unjust enrichment because the former husband could not establish essential elements of his claims of conversion and unjust enrichment — namely, that the former wife had illegally assumed ownership or use of property belonging to the former husband or that the former wife had no right to the use of the personal property in her possession. The trial court ordered the former wife to provide an accounting of the personal property, and after the former wife provided a list identifying the personal property from the marital estate that had remained in her possession and the personal property that the former husband had removed from the marital residence, the trial court, on September 12, 2008, found that the action was concluded.[1]
The former husband then initiated this action, designated as case no. DR-94-3189.02, on May 21, 2010, seeking to hold the former wife in contempt for her alleged failure to comply with sub-paragraph 6.a.(4) of the divorce judgment and with the trial court’s 1999 consent order. The former wife answered the contempt petition, generally denying the former husband’s allegations. The former wife requested that the trial court dismiss the action and award her attorney fees.
The trial court conducted an ore tenus hearing on April 13, 2011. On May 10, 2011, the trial court entered its judgment finding that the former wife was not in contempt for failing to comply with sub-paragraph 6.a.(4) and the 1999 consent order. The trial court also ordered the former husband to pay $3,220 to the former wife as attorney fees.
The former husband filed a motion to alter, amend, or vacate the trial court’s judgment or, alternatively, for a new trial; the trial court denied that motion. The former husband timely filed his notice of appeal.

Analysis

The former husband challenges the trial court’s award of attorney fees, the trial court’s decision to allow the former wife’s counsel to ask leading questions of the former wife on cross-examination, and the trial court’s finding that the former wife was not in contempt. We address those issues out of order.
We first address the former husband’s challenge to the trial court’s ruling that the former wife’s counsel was entitled to ask leading questions of her own client because the former wife had been called to testify by the former husband. The former husband asserts that, because the former wife’s counsel was allowed to ask the former wife leading questions, the former wife’s counsel was able to simply feed the former wife the answers she wished to obtain, thus prejudicing him to the point of reversible error. We disagree.
Rule 611(c), Ala. R. Evid., provides, in pertinent part, that “[Heading questions are permitted on cross-examination.” That principle has been recognized and applied in cases so numerous that supporting citations are unnecessary. The Advisory Committee’s Notes to Rule 611 state, in pertinent part, that, “[ujnder Rule *795 611(c), leading questions should always be permitted on cross-examination.”[2] Further, “ ‘the trial court has broad discretion in evidentiary matters.’ ” Blakley v. Johnson, 80 So.3d 250, 260 (Ala.Civ.App.2010) (quoting Bush v. Alabama Farm Bureau Mut. Cas. Ins. Co., 576 So.2d 175, 177 (Ala.1991)).
Our supreme court has addressed the exact issue raised by the former husband. In Newman v. Bankers Fidelity Life Insurance Co., 628 So.2d 439 (Ala.1993), Ma-die Newman appealed from an adverse judgment entered in favor of Bankers Fidelity Life Insurance Company. On appeal, Newman argued, among other things, that the trial court had erred in allowing Bankers Fidelity’s lawyer to cross-examine the president of that insurance company, 1.e., the corporate representative of the lawyer’s client, by the use of leading questions. Id. at 443. The supreme court stated: “Newman called Eugene Choate, the president [of the insurance company] and its representative at the defendants’ table during trial, as an adverse witness on direct examination.” Id. at 442. After noting that evidentiary matters are within the sound discretion of the trial judge and that Rule 43(b), Ala. R. Civ. P., allows the use of leading questions on cross-examination, the supreme court summarily affirmed the trial court’s ruling. Id. at 442-43. Thus, our supreme court sanctioned a lawyer’s use of leading questions when cross-examining his or her own client when that client was called as a witness by the other party.
The former husband argues that Newman, supra, is distinguishable from the instant case because, in that case, the supreme court relied on subdivision (b) of Rule 43, Ala. R. Civ. P., which subdivision has since been omitted from that rule; because, in Newman, our supreme court did not discuss the extent of the cross-examination that had occurred in that case; and because the supreme court’s decision contains no indication that Newman argued against application of the general rule. We reject those arguments.
Although subdivision (b) of Rule 43, Ala. R. Civ. P., has been omitted from the Alabama Rules of Civil Procedure, the Committee Comments to the January 1, 1996, Amendment of Rule 43 provide, in pertinent part:
“ ‘Subdivision (b). The subdivision is no longer needed or appropriate since the matters with which it dealt are treated in the Rules of Evidence. The use of leading questions, both generally and in the interrogation of an adverse party or witness identified with him, is the subject of Evidence Rule 611(c)....’”
Thus, Rule 43(b) was omitted from the Alabama Rules of Civil Procedure because Rule 611(c), Ala. R. Evid., covers the same issue and is deemed to have negated the need for, and to have replaced, Rule 43(b). As noted above, Rule 611(c) specifically allows the use of leading questions on cross-examination.
We further note that, as an intermediate appellate court, we are bound by the holdings of our supreme court. See, e.g., Kanellis v. Pacific Indem. Co., 917 So.2d 149, 154 (Ala.Civ.App.2005). Because our supreme court addressed the precise situation before us in Newman, supra, and approved the use of leading questions in the same manner allowed by the trial court in this case, we find no reversible error on this issue.
The former husband next argues that the trial court erred in failing to find *796 the former wife in contempt for her alleged failure to comply with subparagraph 6.a.(4) of the divorce judgment and the 1999 consent order. The former husband argues that the trial court was required to find the former wife in contempt of court because, he says, the former wife admitted during her testimony that she had canceled the court-ordered inventory and had not rescheduled that inventory. As support for his argument, the former husband relies on Hood v. Hood, 76 So.3d 824, 831 (Ala.Civ.App.2011) (“ ‘ “ ‘The failure to perform an act required by the court for the benefit of an opposing party constitutes civil contempt.’ ” ’ ” (quoting Reed v. Dyas, 28 So.3d 6, 8 (Ala.Civ.App.2009), quoting in turn other cases)).
However, “whether a party is in contempt of court is a determination committed to the sound discretion of the trial court, and, absent an abuse of that discretion or unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, this court will affirm.” Stack v. Stack, 646 So.2d 51, 56 (Ala.Civ.App.1994). Thus, we review the evidence to determine if the trial court’s finding, i.e., that the former wife was not guilty of contempt, is so unsupported by the evidence as to be plainly and palpably wrong. We construe the evidence most favorably to the former wife, the prevailing party, as we are required to do on appeal from a judgment based on ore tenus proceedings. See Driver v. Hice, 618 So.2d 129,131 (Ala.Civ.App.1993).
The trial court heard testimony from the former wife that, in April 1996, the former husband removed furniture and other items of personal property from the marital residence without the former wife’s knowledge or acquiescence. The former wife testified that she had had no prior knowledge that he had planned to remove those items. The former wife also testified that she prepared a list of the personal property remaining in her possession and that she indicated her first selection from that list, which, the former wife testified, she believed was in accord with subpara-graph 6.a.(4). The former wife testified that she then provided that list to her lawyer and that it was her understanding that her list was then provided to the former husband’s legal counsel. The former wife, who by the time of this action was no longer represented by the same lawyer, testified that, due to the passage of time, she did not have that list available to her.
The former wife testified that she had received from the former husband a list he had prepared in order to comply with sub-paragraph 6.a.(4); the former wife submitted into evidence a copy of that list. The former husband’s list stated: “All furniture and furnishings. Barry V. Frederick.” The former wife testified that she could not proceed with the selection process set out in subparagraph 6.a.(4) or the 1999 consent order in light of the former husband’s “list” and his selection of “all” of their personal property. She also testified that the former husband had taken the items he had wanted from the marital residence when he abruptly left in April 1996 rather than making a list and attempting to divide the personal property with the former wife. The former wife stated that she had believed that the former husband had been satisfied with that division of the personal property until she filed her contempt petition in 1997.[3]
*797 The former wife admitted that she had canceled the inventory of personal property on the date scheduled in the 1999 consent order due to medical reasons. She initially testified that she had not attempted to reschedule that inventory for a later date; however, upon reviewing documentary evidence introduced by the former husband, i.e., a June 1, 1999, letter written by the former wife to the former husband’s lawyer, it became apparent that the former wife had, in fact, attempted to reschedule the inventory for a later date. In her letter, the former wife stated:
“Regarding the inventory, as you are aware, I had to cancel the previous dates due to medical reasons. The last I heard, John, from your office, was contacting Mr. Shaw for new dates and to date have heard nothing from him. You know that [the former husband] came into my house and took exactly what he wanted when he moved out and he did not follow the divorce decree.”
Based on that letter, the former wife corrected her testimony to state that she had attempted to reschedule the court-ordered inventory of the personal property.
The former wife also testified that, during a deposition taken in connection with the former husband’s 2007 civil suit against her, the former husband had indicated that he was seeking an award of damages equal to the monetary value of the items rather than the return of the items themselves; the former husband acknowledged that he had not requested that any personal property be returned to him in the 2007 civil suit. In the present action, the former husband was asked to identify the specific items of personal property he wished to have returned to him; he could not identify any specific items.[4] The former wife testified that she believed the former husband had no interest in obtaining possession of the property made the basis of his repeated legal actions but that he was interested only in harassing her.
The former husband testified that he had contacted' the former wife multiple times by telephone attempting to engage in the process set forth in subparagraph 6.a.(4) to divide the parties’ personal property. According to the former husband, whenever he raised the subject of dividing the personal property, the former wife informed him in “salty” language that he was not getting anything. According to the former husband, he filed his civil action seeking damages from the former wife because of his frustration with her repeated refusal to divide the parties’ personal property. He denied that the former wife had ever provided a list of personal property to him. The former husband, however, admitted that, since the divorce, the former wife had provided him with certain family heirlooms, his weights, and a weight bench from the marital residence.
The former husband acknowledged that he had prepared the list of personal property that stated “All furniture and furnishings” and that it represented his desired division of the marital personal property. According to the former husband, he was not required to provide an itemized list of the personal property in his possession and the former wife was not entitled to *798 select from the items in his possession. The trial court informed the former husband that he was “misrepresenting [sub-paragraph 6.a.(4) ] to the Court.”
Based on the above summary of the evidence, it is clear that the parties presented conflicting versions of events that were open to interpretation by the trial court. In the former husband’s version of events, the former wife simply refused to participate in the procedures set out in the divorce judgment and the 1999 consent order to divide the parties’ personal property and had cursed at him whenever he attempted to engage in that process. In the former wife’s version of events, the former husband took whatever personal property he wanted without consulting her, refused to make a list of the specific personal property in his possession, refused to reschedule the date to complete the inventory as ordered by the trial court, and repeatedly filed litigation with the intent to harass the former wife.
“In ore tenus proceedings the trial court is the sole judge of the facts and of the credibility of witnesses.” Driver v. Hice, 618 So.2d at 131. In New Properties, L.L.C. v. Stewart, 905 So.2d 797 (Ala.2004), our supreme court stated:
“[Wjhen a trial court makes no specific findings of fact, ‘this Court will assume that the trial judge made those findings necessary to support the judgment.’ Transamerica Commercial Fin. Corp. v. AmSouth Bank, N.A., 608 So.2d 375, 378 (Ala.1992). Under the ore tenus rule, ‘ “appellate courts are not allowed to substitute their own judgment for that of the trial court if the trial court’s decision is supported by reasonable inferences to be drawn from the evidence.” ’ Yates v. El Bethel Primitive Baptist Church, 847 So.2d 331, 345 (Ala.2002) (quoting Ex parte Pielach, 681 So.2d 154, 155 (Ala.1996)).”
905 So.2d at 799. Applying the attendant presumptions to the trial court’s judgment, we conclude that the evidence was sufficient to support the former wife’s version of events — that she had attempted in good faith to comply with the procedure set forth in subparagraph 6.a.(4) of the divorce judgment — and, therefore, sufficient to support the trial court’s judgment. Therefore, we find no reversible error in the trial court’s failure to find the former wife in contempt of court.
We next address the former husband’s argument that the trial court erred in ordering him to pay to the former wife $3,220 as attorney fees. We agree. We find no basis in the record to support an award of attorney fees to the former wife.[5] In contempt proceedings, attorney fees may be awarded only when the defendant is found in contempt. See, e.g., Robbins v. Payne, 84 So.3d 136, 141 (Ala.Civ.App.2011) (recognizing that a trial court may award attorney fees in a proceeding to modify a divorce judgment and in a contempt proceeding in which a finding of contempt is made); Sosebee v. Sosebee, 896 So.2d 557, 564 (Ala.Civ.App.2004) (“We agree that [Ala.Code 1975,] § 30 — 2—54[,] precludes the award of an attorney fee to the petitioner in a contempt action when the trial court fails to make a finding of contempt against the defending party.”); and Deines v. Deines, 424 So.2d 1334, 1335 (Ala.Civ.App.1983) (“As to unpaid alimony, ‘attorney’s fees in enforcement proceed *799 ings may not be awarded when no contempt citation is made.’ ” (quoting Scott v. Scott, 375 So.2d 797, 799 (Ala.Civ.App.1979))). The former wife did not assert a counterclaim against the former husband for contempt as required by Rule 70A(c)(l), Ala. R. Civ. P., and the record does not bear out any possibility that the trial court found the former husband in contempt. We, therefore, reverse the trial court’s judgment to the extent it ordered the former husband to pay $3,220 to the former wife as attorney fees.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ„ concur.

. In her "Notice of Filing Accounting” filed with the trial court, the former wife identified room by room the items of personal property that the former husband had taken with him from the parties’ former marital residence and the items that had remained with her. She also indicated that, since the divorce, she had turned over additional items to the former husband, "such as mountain bike, weights and weight benches, personal belongings, and family heirlooms, etc.”

. Even on direct examination, “[w]hether to allow or disallow a leading question is within the discretion of the trial court and except for a flagrant violation there will not be reversible error.” Bradford v. Stanley, 355 So.2d 328, 331 (Ala.1978).

. During the former husband's deposition, taken in connection with his 2007 civil suit for damages, the former husband was asked how he determined which items of personal property he was going to take from the marital residence on April 30, 1996, when he moved out; the former husband responded: "[I]f I could have, I would have taken every *797 thing.” He testified that he "started in the first room 'til she ... I got as far as I could.” He explained that the former wife had summoned the police to the marital residence, at which time the former husband stopped removing additional items of personal property. A copy of that deposition transcript is included in the record.

. The former husband admitted that he had no list of personal property with him at the April 2011 hearing. He testified that the parties could use the former wife's list and that he "want[ed] to go through the selection process [and] then I can tell you what [items I want]. Otherwise, she’d ruin what I picked. That’s the way she is.”

. The former wife relies on the Alabama Litigation Accountability Act ("the ALAA”), Ala. Code 1976, §§ 12-19-270 to -276, as support for the trial court's award to her of $3,220 in attorney fees. The former wife, however, did not assert a claim under the ALAA in the trial court, and the trial court stated no grounds in support of its attorney-fee award, as would be required to support an award under the ALAA. We, therefore, reject the arguments presented by the former wife on the attorney-fee issue.