On Application for Rehearing

THOMAS, Judge.
The opinion of September 11, 2015, is withdrawn, and the following is substituted therefor.
Sebastian Goldman (“the former husband”) and Senta White Goldman (“the former wife”) were divorced by a judgment (“the divorce judgment”) of the Jefferson Circuit Court (the trial court”) on July 29, 2011. The record indicates that the divorce judgment. awarded the former .wife sole physical custody of the parties’ two minor children and ordered the former husband to pay $1,303.61 in monthly child support and $750 in monthly periodic alimony. The former wife was also awarded 35% of the former husband’s military-retirement benefits upon his retirement. On March 6, 2013, the former husband filed a petition in the trial court seeking a downward modification of his child-support and alimony obligations, citing a .material change in circumstances.[1] The former wife answered the petition on July 16, 2013.
On November 13, 2013, the former wife filed an amended answer seeking an award of an attorney fee and a counterclaim asserting, in pertinent part, that the former husband was in arrears in his child-support and alimony obligations and seeking a finding of contempt.[2] The former husband filed an answer to the counterclaim on November 25, 2013. The former wife amended her counterclaim on June 3, 2014, asserting that, although the former hus *490 band had retired from the military, she had not received the 35% of his military-retirement benefits that she had been awarded in the divorce judgment.
A trial was held on October 20, 2014, on the former husband’s petition and the former wife’s counterclaim, at which the trial court heard evidence ore tenus. At the trial, the former husband testified that when the divorce judgment was entered in 2011 he was on active duty in the Army and earned a monthly gross income $7,904.84. The former husband further testified, however, that he was medically discharged from the Army in October 2012 and that, after exhausting his accumulated leave, he began receiving military-retirement benefits in January 2013. The undisputed evidence presented indicated that the monthly amount that the former husband received was separated into $1,108.28 in taxable, military-retirement benefits and a monthly disability payment of $3,145.49 from the United States Department of Veterans Affairs (“the'disability benefits”). The former husband also testified that he was currently employed by the City of Hueytown as a police officer and that his gross monthly income from that employment was $5,287 and that his net monthly employment income was $3,387. The former wife testified that she worked as a secretary with the Bessemer City School System; a Form CS-42 prepared by the trial court and included in the record indicates that her monthly gross income was $2,515.
The trial court entered a judgment on the claims asserted in both the former husband’s petition and the former wife’s counterclaim on October 28, 2014 (“the 2014 judgment”), that, in pertinent part, denied the former husband’s petition to modify his child-support and alimony obligations, determined that the former husband had failed to pay $14,862.64 in alimony, ordered the former husband to pay $500 per month toward the alimony ar-rearage, and ordered the former husband to pay the former wife $12,000 in attorney fees. The trial court also found the former husband in civil and criminal contempt and sentenced him to 175 days in the Jefferson County jail; however, that sentence was suspended to allow the former husband the opportunity to purge himself of the contempt. The former wife filed a motion to alter, amend, or vacate the judgment on November 24, 2014; the former husband filed a postjudgment motion on November 25, 2014. After a hearing, the trial court entered an order on January 30, 2015, modifying the 2014 judgment by removing the criminal-contempt sentence of 175 days’ incarceration.[3] The trial court also determined that the former wife had not received the 35% of the former husband’s militaiy-retirement benefits that she had been awarded in the divorce judgment and awarded the former wife $387.80 per month from the former husband’s military-retirement benefits and an accrued arrear-age of $14,736.40. The former husband filed a timely notice of appeal to this court on March 13, 2015.
In his brief on appeal, the former husband argues that the trial court erred by denying his petition to modify alimony, by denying his petition to modify child support, and by finding him in contempt. The former husband also argues that the trial court miscalculated the amount of military-retirement benefits and the amount of past-due alimony that he owed to the former wife. Lastly, the former husband argues that the monthly amount he was ordered to pay toward the alimony arrearage and the amount of the attorney fees he *491 was ordered to pay the former wife were excessive.

I. Calculation of Military-Retirement Benefits

Taking the former husband’s issues out of turn, we first address whether the trial court miscalculated the amount of past-due military-retirement benefits that the former husband owed the former wife. The record indicates that the divorce judgment awarded the former wife 35% of the former husband’s military-retirement benefits. In the 2014 judgment, the trial court awarded the former wife $14,736.40, representing payments due from August 2011 through September 2014 at $387.80 per month, plus accrued interest. The evidence presented at trial was undisputed that the former husband was not discharged from the Army until October 2012. The former husband argues that he did not begin to receive military-retirement benefits until January 2013; thus, according to the former husband, the former wife was due payments from January 2013 through September 2014, totaling $8,143.80. The former wife concedes that the trial court’s calculation is erroneous; however, the former wife argues that the past-due military-retirement-benefit amount should be calculated from October 2012 through September 2014 and total $9,307.20. We therefore reverse this portion of the trial court’s judgment and remand this cause for the trial court to determine the appropriate amount of past-due military-retirement benefits to award to the former wife.

II. Petition to Modify Alimony

“Periodic alimony and its subsequent modification are matters resting within the sound discretion of the trial court, and the trial court’s judgment as to those issues will not be reversed absent a showing of an abuse of discretion, Tiongson v. Tiongson, 765 So.2d 643, 645 (Ala.Civ.App.1999).
“In Bray v. Bray, 979 So.2d 798 (Ala.Civ.App.2007), this court set forth the applicable standard of review as follows:
“ ‘ “Our standard of review when reviewing an appeal from a judgment granting or denying a requested modification of alimony is well settled.
“‘“‘An obligation to pay alimony may be modified only upon a showing of a material change in circumstances that has occurred since the trial court’s previous judgment, and the burden is on the party seeking a modification to make this showing. ...’
“ ‘ “Glover v. Glover, 730 So.2d 218, 220 (Ala.Civ.App.1998) (citation omitted).”
“ ‘Ederer v. Ederer, 900 So.2d 427, 428 (Ala.Civ.App.2004),
“‘“Where a trial court receives ore tenus evidence, its judgment based on that evidence is entitled to a presumption of correctness on appeal and will not be reversed absent a showing that the trial court abused its discretion or that the judgment is so unsupported by the evidence as to be plainly and palpably wrong.”
‘“Sellers v. Sellers, 893 So.2d 456, 457-58 (Ala.Civ.App.2004).’
“979 So.2d at 800.”
Santiago v. Santiago, 122 So.3d 1270, 1278 (Ala.Civ.App.2013).
As our supreme court explained in Ex parte Billeck, 777 So.2d 105 (Ala.2000), veteran’s disability benefits received in lieu of military-retirement benefits may not be considered as income of the obligor *492 in determining an award of alimony,[4] It is undisputed that the former husband receives the disability benefits in lieu of military-retirement benefits. Thus, the disability benefits must be excluded from the former husband’s income for purposes of calculating his alimony obligation to the former wife. The former husband testified that he received- $3,387 in net monthly income from the City of Hueytown. See Rieger v. Rieger, 147 So.3d 421, 431 (Ala.Civ.App.2013) (“For purposes of determining a spouse’s ability to pay, and for purposes of calculating, an appropriate amount of periodic alimony, the trial court should ordinarily use the spouse’s net income as the starting point for these evaluations.”). He also received $1,108.28 per month in military-retirement benefits; however, we also note that the former wife was awarded 35%, or $387.80 per month, of the former husband’s military-retirement benefits, leaving him $720.48 per month.[5] The former husband further testified that his monthly expenses totaled $4,117; his monthly expenses were essentially unchallenged by the former wife. Considering that the former husband’s available monthly income is $4,107.48 ($3,387 + $720.48 = $4,107.48), it appears that the former husband’s monthly expenses exceed his available income. Thus, we conclude that the former husband demonstrated a material change in circumstancés warranting a downward modification of his alimony obligation and that the trial court exceeded its discretion in denying his petition to modify his alimony obligation. Accordingly, that portion of the trial court’s judgment is reversed, and the trial court is instructed to terminate the former husband’s alimony obligation and to reserve jurisdiction to make a future award of alimony should a future change in circumstances merit such an award.

III. Petition to Modify Child Support

We next address the former husband’s argument that the trial court erred by denying his petition to modify .his. child-support obligation.. It’ is well settled that
‘““[t]he modification of a child-support order rests soundly within the trial court’s discretion and will not be disturbed on appeal absent a showing that the ruling is not supported by the evidence and, thus, is plainly and palpably wrong. Berryhill v. Reeves, 705 So.2d 505 (Ala.Civ.App.1997).” ’
“Thomas v. Campbell, 960 So.2d 694, 696-97 (Ala.Civ.App.2006) (quoting Lindsey v. Patterson, 883 So.2d 223, 225 (Ala.Civ.App.2003)).” "
Vajner v. Vajner, 98 So.3d 24, 27 (Ala.Civ.App.2012).
Rule 32(A)(3)(c), Ala. R. Jud. Admin., provides:
“There shall be a rebuttable presumption that child support should be modified ■ when the difference between the existing child-support award and the amount determined by application of these guidelines varies more than ten percent (10%), unless the variation is due to the fact that the existing child-support award resulted from a rebuttal of the guidelines and there has been no *493 change in the circumstances that resulted in the rebuttal of the guidelines.”
The trial court specifically stated in the 2014 judgment that it did not find a material change of at least 10⅞ between the former'husband’s existing child-support obligation and the proposed child-support obligation under the Rule 82 guidelines.
When the divorce judgment was entered in 2011, the former husband earned $7,904.84 per month and was ordered to pay $1,303.61 in monthly child support. The former husband argues on appeal that the trial court miscalculated his current monthly gross income. A Form CS-42, completed by the trial court, is included in the appellate record. On the Form CS-42, the former husband is attributed a monthly gross income of $6,395, the sum of his monthly income as a police officer ($5,287) and his military-retirement benefits ($1,108). However, the former husband points out that the former wife’s award of 35% of his military-retirement benefits reduces his monthly income by $387.80.
The former husband is correct that the trial court failed to adjust his and the former wife’s incomes to reflect the former wife’s 35% award • of his military-retirement benefits., However, the trial court noted on the Form CS-42 that it did not include the former husband’s disability benefits in the child-support calculations. This, too, was errpr. Although the former husband’s disability benefits are precluded from consideration as income for the purpose of calculating alimony, see our discussion, supra, the same is not true for the calculation of child support.
In Ex parte Billeck, supra, our supreme court solely addressed the issue whether veteran’s disability benefits received in ■lieu of military-retirement benefits could be considered as income in the calculation of alimony; the Billeck court did not address whether the same reasoning applied to child-support calculations. Likewise, Mansell v. Mansell, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989), on which Ex parte Billeck relied, solely addressed whether those same disability benefits could be treated as community property in a divorce proceeding.[6] The Mansell Court was not asked to determine whether disability benefits were properly considered as income in child-support calculations. However, in Rose v. Rose, 481 U.S. 619, 107 S.Ct. 2029, 95 L.Ed.2d 599 (1987), the United States Supreme Court held thát federal law did not prevent a trial court from considering veteran’s disability benefits as a financial resource in setting the amount of a child-support obligation. 481 U.S. at 636.- In so holding, the Rose Court noted that “Congress clearly intended veterans’ disability benefits to be used, in part, fdr the ^support of veterans’ dependents.” Id. at 631. It further found that “state contempt proceedings to enforce a valid child support order coincide with Congress’ intent to provide veterans’ disability compensation for the benefit of both appellant and his dependents.” Id. Based upon Rose, which, importantly, was not discussed or overruled by Mansell, it would seem that the exclu *494 sion of the former husband’s disability benefits from his income for purposes of calculating child support would contradict the “congressional intent of the entire veterans’ disability benefits program.” Wingard v. Wingard, 11 Pa. D. & C. 4th 343, 347 (Com.Pl.) aff'd, 418 Pa.Super. 643, 606 A.2d 1238 (1991). See also Casey v. Casey, 79 Mass.App.Ct. 623, 634-36, 948 N.E.2d 892, 901-02 (2011), and Fisher v. Fisher, (No. F-6233, Aug. 17, 1989)(Del.Fam.Ct.1989).
Rule 32(B), Ala. R. Jud. Admin., defines income for purposes of calculating child support as follows:
“(1) Income. For purposes of the guidelines established by this rule, ‘income’ means actual gross income of a parent, if the parent is employed to full capacity, or the actual gross income the parent has the ability to earn if the parent is unemployed or underemployed.
“(2) Gross Income.
“(a) ‘Gross income’ includes income from any source, and includes, but is not limited to, salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, Social Security benefits, workers’ compensation benefits, unemployment-insurance benefits, disability-insurance benefits, gifts, prizes, and preexisting periodic alimony.
“(b) ‘Gross income’ does not include child support received for other children or benefits received from means-tested public-assistance programs, including, but not limited to, Temporary Assistance for Needy Families, Supplemental Security Income, food stamps, and general assistance.”
Reading Rule 32 in conjunction with Rose, supra, we find no legal basis on which to exclude the former husband’s disability benefits from the child-support calculations.
The former husband is correct that the trial court failed to adjust the parties’ monthly, gross incomes to reflect the former wife’s 35% award of the military-retirement benefits. However, we have determined that the tidal court could have also considered the former husband’s disability benefits in his monthly gross income. After adjusting the monthly gross income amounts for both parties and applying the child-support guidelines set out in Rule 32, it is clear that the former husband’s monthly gross income has actually increased since the entry of the divorce judgment.
“ ‘[T]his Court will affirm the trial court on any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court. Ex parte Ryals, 773 So.2d 1011 (Ala.2000), citing Ex parte Wiginton, 743 So.2d 1071 (Ala.1999), and Smith v. Equifax Servs., Inc., 537 So.2d 463 (Ala.1988).’ ”
Ex parte Moulton, 116 So.3d 1119, 1132 (Ala.2013) (quoting Liberty Nat’l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013, 1020 (Ala.2003)). For that reason, even though the trial court’s finding was based upon incorrect calculations, we affirm that portion of the trial court’s judgment denying the former husband’s petition to modify his child-support obligation.

IV. Calculation of Alimony Arrearage

In the 2014 judgment, the trial court determined that the former husband owed an alimony arrearage of $14,862.64 to the former wife and stated that “[tjhis arrear-age is for the months of December 2011 through October 2014 (35 months).” At the trial, the former wife introduced as an exhibit a spreadsheet detailing the former *495 husband’s alimony-payment history. The exhibit and the testimony of both parties indicated that the former husband paid the full amount of alimony every month from December 2011 through February 2013;[7] therefore, the former husband argued, the amount of the alimony arrearage he was ordered to pay was clearly incorrect. However, the evidence also indicated that the former husband unilaterally reduced his monthly alimony payment from $750 to $25 between March 2013 and July 2014; the former husband paid $150 in the months of August and September 2014, and paid no alimony in October 2014.[8] Thus, based on that evidence, the- former husband’s alimony arrearage amounted to $14,275.
The former husband did not dispute the evidence presented by the former wife’s exhibit or that he had unilaterally reduced the amount of alimony that he had remitted to the former wife. This court has held that a unilateral decision of a payor spouse to withhold payment of alimony before seeking a judicial modification or termination of that obligation may form the basis of a contempt determination. See generally Ex parte Dozier, 170 So.3d 673, 676 (Ala.Civ.App.2014). We note that the former husband’s reduction in alimony payments coincides with the filing of his petition to modify his alimony obligation; however, although a trial court has the discretion to modify or terminate an alimony obligation retroactive to the date the petition to modify was filed, see Blount v. Blount, 159 So.3d 737, 742 (Ala.Civ.App.2013) (citing Hinds v. Hinds, 887 So.2d 267, 273 (Ala.Civ.App.2003)), it is not required to do so.
A review of the ' former wife’s exhibit indicates that the former husband had accrued an alimony arrearage of $14,275, excluding interest,' from March 2013 through October 2014. It is evident that the trial court’s notation that the award of $14,862.64 constituted an arrear-age beginning in December ‘ 2011 ■ was merely a scrivener’s error.
“ ‘ “When ore tenus evidence is presented, a presumption of correctness exists as to the trial court’s findings on issues of fact; its judgment based on these findings of fact will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or. against the great weight of the evidence. J & M Bail Bonding Co. v. Hayes, 748 So.2d 198 (Ala.1999); Gaston v. Ames, 514 So.2d 877 (Ala.1987).” ’” "
Cheek v. Dyess, 1 So.3d 1025, 1028 (Ala.Civ.App.2007) (quoting Farmers Ins. Co. v. Price-Williams Assocs., Inc., 873 So.2d 252, 254 (Ala.Civ.App.2003), quoting in turn City of Prattville v. Post, 831 So.2d 622, 627-28 (Ala.Civ.App.2002)). Thus, we conclude that the trial court’s award of an alimony arrearage was not reversible error.

V. Civil and Criminal Contempt

The former husband also argues that the trial court erred by finding him in civil and criminal contempt for failing to pay the full amount of his alimony obligation for 20 months.
*496 • “‘Absent an abuse of discretion, or unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, the determination of whether a party is in contempt is within the sound discretion of the trial court.’ Shonkwiler v. Kriska, 780 So.2d 703, 706 (Ala.Civ.App.2000) (citing Shellhouse v. Bentley, 690 So.2d 401 (Ala.Civ.App.1997)). In order to find [a former spouse] guilty of contempt under either Rule 70A(a)(2)(C)(ii) (criminal contempt) or Rule 70A(a)(2)(D) (civil contempt), Ala. R. Civ. P., the trial court would have had to determine that the [former spouse] had willfully failed or refused to comply with a court order. See T.L.D. v. C.G., 849 So.2d 200, 205 (Ala.Civ.App.2002).”
Carnes v. Carnes, 82 So.3d 704, 715 (Ala.Civ.App.2011).
The former husband is correct that it is well established that imprisonment for civil contempt should not be imposed when the failure to comply is due to the inability to pay instead of the obligor’s contumacy. See, e.g., Sexton v. Sexton, 935 So.2d 454, 460-61 (Ala.Civ.App.2006); Murphy v. Murphy, 447 So.2d 798, 800 (Ala.Civ.App.1984); and Ex parte Talbert, 419 So.2d 240, 241 (Ala.Civ.App.1982). However, the former husband did not present to the trial court an inability to pay as a defense to contempt; thus, he cannot raise that issue for the first time on appeal. See T.J.H. v. S.N.F., 960 So.2d 669, 673 (Ala.Civ.App.2006) (“This court may not consider an issue that is raised for the first time on appeal. Burleson v. Burleson, 875 So.2d 316, 322 (Ala.Civ.App.2003), and Andrews v. Merritt Oil Co., 612 So.2d 409 (Ala.1992).”).
Rule 70A(a)(2)(D), Ala. R. Civ. P., defines civil contempt as “willful, continuing failure or refusal of any person to comply with a court’s lawful writ, subpoena, process, order, rule, or command that by its nature is still capable of being complied with.” This court has stated:
“ ‘ “ ‘The failure to perform an act required by the court for the benefit of an opposing party constitutes civil contempt.’ Carter v. State ex rel. Bullock County, 393 So.2d 1368, 1370 (Ala.1981).” J.K.L.B. Farms, LLC v. Phillips, 975 So.2d 1001, 1012 (Ala.Civ.App.2007). Furthermore, “ ‘[t]he purpose of a civil contempt proceeding is to effectuate compliance with court orders and not to punish the contem-nor,’ Watts v. Watts, 706 So.2d 749, 751 (Ala.Civ.App.1997).” Hall v. Hall, 892 So.2d 958, 962 (Ala.Civ.App.2004).’
“Reed v. Dyas, 28 So.3d 6, 8 (Ala.Civ.App.2009).”
Hood v. Hood, 76 So.3d 824, 831-32 (Ala.Civ.App.2011).
Criminal contempt is defined, in pertinent part, as “[w]illful disobedience or resistance of any person to a court’s lawful writ, subpoena, process, order, rule, or command, where the dominant purpose of the finding of contempt is to punish the contemnor.” Rule 70A(a)(2)(C)(ii), Ala. R. Civ, P. “In order to establish that a party is in criminal contempt of a court order, a contempt petitioner must prove beyond a reasonable doubt that the party against whom they are seeking a finding of contempt was subject to a ‘ “lawful order of reasonable specificity,” ’ that the party violated that order, and that the party’s violation of the order was willful.” L.A. v. R.H., 929 So.2d 1018, 1019 (Ala.Civ.App.2005) (quoting Ex parte Ferguson, 819 So.2d 626, 629 (Ala.2001), quoting in turn United States v. Turner, 812 F.2d 1552, 1563 (11th Cir.1987)).
In the 2014 judgment, the trial court found that the former husband had “failed to pay [alimony] through his willful *497 contumacy” and that that action was a “willful violation of the [trial court’s] former orders.” As referenced above, the former husband’s unilateral decision . to modify his alimony obligation without, permission of the trial court was sufficient to form the basis for a finding of criminal contempt. Additionally, the former husband’s failure to comply with the divorce judgment supported a finding of civil contempt. Therefore, we affirm the contempt findings pertaining the former, husband’s failure to pay his alimony obligation. See Fludd v. Gibbs, 817 So.2d 711, 716 (Ala.Civ.App.2001). Furthermore, we are unpersuaded by the former husband’s assertion that the holding in Ex parte Billeck alleviated his obligation to pay the former wife alimony before seeking a modification from the trial court.

VI. Arrearage-Payment Schedule

After determining that the former husband owed an alimony arrearage, the trial court ordered him to pay $500 per month to the former wife until the arrear-age was satisfied. The former husband argues that this amount is excessive and financially crippling. The former husband’s argument is premised upon our supreme court’s holding in Ex parte Billeck that the former husband’s disability benefits are precluded from consideration as income for purposes of calculating periodic alimony. However, Ex parte Billeck does not address whether those benefits may be considered as income to cure an arrearage that was accrued due to the obligor’s contumacious actions. Because the former husband does not assert any other legal grounds for reversal, that portion of the trial court’s judgment ordering him to pay $500 per month in satisfaction of the alimony arrearage is affirmed. See Rule 28, Ala. R.App. P. “ ‘[I]t is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.’ ” Butler v. Town of Argo, 871 So.2d 1, 20 (Ala.2003) (quoting Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994)); '

VII. Attorney-Fee Award

Finally, the former husband disputes the trial' court’s award of a $12,000 attorney fee to the former wife.
■“ ‘Whether to award an attorney fee in a domestic relations, case is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be reversed. Thompson v. Thompson, 650 So.2d 928 (Ala.Civ.App.1994). “Factors to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties’ conduct, the results of the litigation, and, where appropriate, the trial court’s knowledge and experience as to the value of the services performed by the attorney.” Figures v. Figures, 624 So.2d 188, 191 (Ala.Civ.App.1993). Additionally, a trial court is presumed to have knowledge from which it may set a reasonable attorney fee even when there is no evidence as to the reasonableness of the attorney fee. Taylor v. Taylor, 486 So.2d 1294 (Ala.Civ.App.1986).’
“Glover v. Glover, 678 So.2d 174, 176 (Ala.Civ.App.1996).”
Bobbins v. Payne, 84 So.3d 136, 139-40 (Ala.Civ.App.2011).
After reviewing the record, we conclude that the trial court did not exceed its discretion in awarding the former wife an attorney fee. Many of the factors the trial court was to consider support the trial court’s decision to award an attorney *498 fee. For example, the results of the litigation were predominantly in the former wife’s favor. Additionally, the evidence was undisputed that the former husband had unilaterally significantly decreased his monthly alimony payments. The evidence presented at the trial further indicated that the former wife earned significantly less than the former husband.[9]
Moreover, § 30-2-54, Ala.Code 1975, provides:
“In all actions for divorce or for the recovery of alimony, maintenance, or support in which a judgment of divorce has been issued or is pending and a contempt of court citation has been made by the court against either party, the court may, of its discretion, upon application therefor, award a reasonable sum as fees or compensation of the attorney or attorneys representing both parties.”
We have already concluded that the trial court’s decision that the former husband was in contempt was not error. Accordingly, the trial court’s award of an attorney fee to the former wife was proper and is due to be affirmed.
The former husband also asserts in his appellate brief that the former wife’s attorney fees were excessive; however, he fails to cite any legal authority in support of that argument. Therefore, we do not consider this portion of the former husband’s argument. See Rule 28 and Butler, supra.

Conclusion

Based upon the foregoing, we affirm the trial court’s judgment in part, reverse it in part, and remand this case to the trial court to enter a judgment consistent with the reasoning of this opinion.
APPLICATION GRANTED; OPINION OF SEPTEMBER 11, 2015, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and DONALDSON, J., concur.
MOORE, J., concurs in part and dissents in part, with writing, which PITTMAN, J., joins.

. The former wife’s counterclaim was assigned case number DR-09-900769.02. The former wife's counterclaim also asserted additional claims that are not pertinent to this appeal.

. The postjudgment order specifically stated that the findings of civil and criminal contempt were not removed from the final judgment.

. In Ex parte Billeck, supra, our supreme court specifically held that, based upon Mansell v. Mansell, 490 U.S. 581, 109 S.Ct, 2023, 104 L.Ed.2d 675 (1989), 10 U.S.C. § 1408(a)(4), a section of the Uniformed Services Former Spouses’ Protection Act, 10 U.S.C.. § 1408, preempts our state courts from including veteran’s disability benefits as income for purposes of calculating an alimony award.

. Our calculations indicate that 35% of $1,108.28 is actually $387.90; 35% of $1,108 is $387.80, the figure that the parties and the trial court apparently used.

. Mansell, supra, was an appeal from the California Supreme Court. California, unlike Alabama, is a "community property” state. We note that other states have rejected our supreme . court’s interpretation of Mansell. See Steiner v. Steiner, 788 So.2d 771, 778 (Miss.2001); Clauson v. Clauson, 831 P.2d 1257, 1263 (Alaska 1992); Murphy v. Murphy, 302 Ark. 157, 159, 787 S.W.2d 684, 685 (1990); and In re Marriage of Morales, 230 Or.App. 132, 138, 214 P.3d 81, 85 (2009)("As we recently observed, ‘[t]he "federal question” in Mansell was a narrow one; Whether federal law preempts the application of state community property laws to military [retirement] pay.’ ” (quoting In re Marriage of Hayes and Hayes, 228 Or.App. 555, 565, 208 P.3d 1046, 1052 (2009))).

. Although the former wife’s exhibit indicated that the former husband had failed to pay the alimony in full for the months of August through November 2011, the former husband explained at the trial that during those months an overpayment of child support had been deducted from his paycheck and that he had reduced the monthly alimony payments to compensate for those overpayments.

. Although the 2014 judgment was entered on October 28, 2014, the divorce judgment ordered that the periodic alimony was due on the first day of each month.

. The former husband has not provided this court with any legal authority that would prohibit the inclusion of his disability benefits as income for the determination of whether to award an attorney fee.